UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DONNA C. DARDEN, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-CV-1737 |
| | § | |
| SIMPLICITY FINANCIAL MARKETING, INC., | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

This Title VII case is before the court on Defendant's Motion for Summary Judgment. Dkt. 27. Having considered the parties' submissions, arguments at a hearing on the record on November 15, 2019, and the law, the court GRANTS the motion and dismisses this case with prejudice.[1]

### I. BACKGROUND

Defendant Simplicity Financial Marketing, Inc. (SFM), formerly known as Dressander BHC, is an independent financial marketing organization that provides annuity, life, and retirement policies to financial advisors and their clients. In July of 2014 Defendant hired Plaintiff Donna Darden, an African-American female, as an Annuity Case Manager in its New Business Division located in The Woodlands, Texas. As an Annuity Case Manager, Darden worked closely with marketers employed by SFM to recruit and solicit agents, and with agents who bring SFM business from customers or carriers.

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment. Dkt. 13. Therefore, Plaintiff's argument that Defendant failed to follow District Judge Vanessa Gilmore's rules for filing a motion for summary judgment is misplaced. *See* Dkt. 30 at 9-11. In addition, Plaintiff's comments that Defendant "threaten[ed]" to "come after her" for attorney's fees" if forced to file a motion for summary judgment, (*Id.* at 11) are not relevant to any issue before the Court.

Plaintiff's supervisor the entire time she was employed by Defendant was Bertha Mora. Mora's supervisor during the relevant period was Barbara Fredrickson.

In March 2017, Frederickson decided to demote Darden to the position of "NB Assistant," at a reduced salary, citing poor job performance and customer complaints. In late 2017, Defendant decided to reorganize its business. Effective February 2018 Defendant laid off 21 workers, including Darden, from The Woodlands, Texas office.

Darden filed a charge with the Equal Employment Opportunity Commission in May 2017 asserting Defendant discriminated against her by demoting her on the basis of her race, age, national origin, color, and religion. The EEOC issued a right to sue letter and Darden timely filed this lawsuit asserting she was demoted on the basis of her race in violation of Title VII and 42 U.S.C. § 1981. Defendant now moves for summary judgment on Plaintiff's claims.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th

Cir. 2002). The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

### B. Title VII and 42 U.S.C. § 1981

Darden's claims[2] are subject to the familiar *McDonnell Douglas* burden-shifting framework. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004). Pursuant to this framework, a plaintiff relying on circumstantial evidence of discrimination must first present evidence of each element of a prima facie case. *Id*. at 317 (citing *Patel v. Midland Mem'l Hosp. & Med. Ctr*., 298 F.3d 333, 342 (5th Cir. 2002)). To establish a prima facie case of discrimination, Plaintiff must show: (1) she was in a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside of her protected class or was otherwise treated less favorably than similarly situated employees. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001); *Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 293 (5th Cir. 2013).

If Plaintiff meets this prima facie burden, a presumption of discrimination arises, shifting the burden of production to Defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Id*.; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 417 (5th Cir. 2016). If Defendant meets its burden to articulate a legitimate reason for its action, the inference of discrimination disappears, and the burden

---

[2] The elements of claims under Title VII and 42 U.S.C § 1981 are identical and subject to the same analysis. *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 n.3 (5th Cir.1999); *Pratt v. City of Houston, Tex.*, 247 F.3d 601, 606 (5th Cir. 2001).

shifts back to Plaintiff to present evidence that the employer's proffered reason is merely pretextual. *Id.* "In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce 'substantial evidence of pretext.'" *Hernandez*, 673 F. App'x at 419 (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)). Plaintiff bears the ultimate burden to prove discrimination. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

### III. ANALYSIS

Defendant argues Plaintiff cannot meet her burden to show a prima facie case of discrimination based on her demotion because she was not replaced by, or treated differently than, a person outside of her protected class. Alternatively, Defendant argues that Plaintiff cannot show that its stated reason for her demotion, her poor job performance, is mere pretext for discrimination.

Defendant also argues that Plaintiff cannot meet her prima facie burden or burden to show pretext on claims of discriminatory termination and retaliation. The Court does not construe Plaintiff's Original Complaint to state such claims. *See* Dkt. 1. But even if pleaded, Plaintiff abandoned any such claims, both by not addressing them in her summary judgment response and explicitly waiving them at the oral hearing on November 15, 2019. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (an issue raised in the complaint but ignored at summary judgment may be deemed waived.); *Davis v. Houston Indep. Sch. Dist.*, Civil Action No. 4:11cv3611, 2013 WL 12311126, at *2 (S.D. Tex. Mar. 27, 2013) (when a plaintiff fails to address a claim in response to a summary judgment motion the plaintiff is deemed to have abandoned it).

**A. Plaintiff Cannot Meet her Prima Facie Burden**

Defendant argues that Plaintiff cannot meet the fourth prong of her prima facie case for discrimination, i.e., that she was replaced by a person outside of her protected class or was otherwise treated less favorably than similarly situated employees.[3] Defendant has presented the Declarations of its Vice President of Human Resources, Heather Peck, and Plaintiff's supervisor, Bertha Mora stating that Plaintiff was not replaced by any employee. Dkt. 27-3 at 7, ¶32; Dkt. 27-4 at 6, ¶17. Plaintiff has no evidence to the contrary, and therefore cannot meet the fourth prong of her prima facie case by showing she was replaced by someone outside her protected class.

Plaintiff attempts to meet her prima facie burden by arguing that Defendant intended to replace Darden with a white female, even if it ultimately did not do so. Frederickson hired "Marianne," a white female, as a case manager in The Woodlands office in May 2016, about 10 months before Darden was demoted. Frederickson sent Peck an email on May 9, 2016 attaching "Marianne's" resume and explaining her reasons for wanting to hire her. Dkt. 32 at 91. Frederickson's email says that there is an L&C team member, JoAnn Beller,[4] who was incapable of meeting the demands of her job. Frederickson's plan was "to bring [Marianne] in presently for L&C, and replac[e] JoAnn." Frederickson went on

---

[3] Defendant does not concede that Plaintiff was qualified for her position but does not rely on Plaintiff's failure to meet that element of her prima facie case for summary judgment. *See* Dkt. 27 at 18 n.17. Courts have expressed hesitation to rely on unsatisfactory job performance to refute Plaintiff's qualifications at the prima facie stage of the analysis. *See Stippick v. Stone & Webster Servs., LLC*, No. CIV.A. H-10-0290, 2011 WL 564081, at *6 (S.D. Tex. Feb. 8, 2011) (citing *Bienkowski, v. American Airlines, Inc.*, 851 F.2d 1503, 1505-06 (5th Cir. 1988) for the proposition that where a plaintiff possesses the same qualifications when hired as when demoted or terminated, "[p]lacing a plaintiff's 'qualifications' in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy.").

[4] Counsel confirmed at the hearing that no party disputes Beller is white.

to explain that Bertha Mora also had an under-performing employee on her team, Donna Darden:

> The goal is to have Marianne move into that position; while we are working through the performance plan on Donna, hire a L&C person to train (via a staffing service, so we are not committed to them until a final decision [about] Donna is made[]) who will take Marianne's position if Bertha finds Donna needs to be terminated for performance.

*Id.* Frederickson's email notes that Marianne has asked for $1,000 more per year than Darden, "who I believe will be replaced."

The language of the email makes clear that Marianne was hired, at least initially, to replace Beller. No decision to terminate or demote Plaintiff had been made at the time Defendant hired Marianne, and the decision to hire Marianne was not dependent on the ultimate need to replace Plaintiff. Peck testified that the email "looks like they are putting a plan in place in case we needed to exit JoAnn and/or Donna from their position." Dkt. 32 at 51. Plaintiff has cited no authority holding that an *intent to replace* a demoted employee in the future with an individual outside the protected class, as opposed to *replacing* a demoted or terminated employee with an individual outside the protected class, satisfies the fourth element of a prima facie case of discrimination under Title VII or 28 U.S.C. § 1981.

Plaintiff also could attempt to satisfy the fourth prong of her prima facie case by showing her demotion amounted to disparate treatment. To do so, Plaintiff must identify a comparator that was treated more favorably under "nearly identical circumstances." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). However, Plaintiff has not met her burden to identify any similarly situated employee

6

whom Defendant treated more favorably. In fact, the summary judgment evidence indicates it would be impossible for Plaintiff to identify a similarly situated employee because she had the lowest evaluation scores of the four case managers on the new business team; no other case manager had as many complaints in close temporal proximity to each other from customers with high dollar volume business; and no other case manager had work issues that necessitated intervention by the company President. Dkt. 27-3 at 7, ¶ 30.

Plaintiff attempts to satisfy her prima facie case by arguing that emails from 2014 demonstrate that certain employees were similarly situated to her. Specifically, she argues that the 2014 emails demonstrate that Mora and Frederickson had to ask employees, including Darden, to clear out a backlog of cases assigned to employees other than Darden. She argues that the fact of a backlog establishes that other employees had "performance issues" and therefore were similarly situated to her. *See* Dkt. 32 at 84-89. One undated email states that Darden closed 13 cases for a co-worker named Cindy. *Id.* at 87. Plaintiff also relies on a February 23, 2017 email stating that Plaintiff was working on "Cindy's f/u" and discussing "difficult/strange cases" with Kayla. *Id.* at 89.

These emails do not establish certain employees as similarly situated comparators. Heather Peck testified that "when work is split up and . . . someone is helping another person, it doesn't necessarily mean they have a performance issue." Dkt. 32 at 48. Plaintiff has presented no evidence regarding the performance history of any of the individuals mentioned in the emails. The emails fall far short of meeting Plaintiff's burden to demonstrate a factual dispute on the issue of whether a similarly situated employee outside of Plaintiff's protected class was treated more favorably than Plaintiff.

7

**B. Plaintiff Cannot Show Pretext**

A plaintiff's prima facie burden is extremely low. *Lewis v. Cont'l Airlines*, No. CV H-06-1707, 2008 WL 11499209, at *9 (S.D. Tex. Feb. 5, 2008) (citing *O'Brien v. Lucas Assocs. Personnel, Inc.*, 127 F. App'x 702, 705 (5th Cir. 2005)). Although the court finds Plaintiff has failed to satisfy the low burden, summary judgment is also proper because she has not met her burden to show Defendant's stated reason for her demotion is pretext.

Defendant contends it demoted Plaintiff due to her job performance and has submitted evidence to support its contention. Plaintiff contends that Defendant's explanation is mere pretext for discrimination, alleging: (1) there is no contemporaneous documentation of Plaintiff's deficient job performance; (2) Defendant did not follow its own procedures before demoting her; (3) Defendant's business plan is contrary to the Texas Insurance Code; and (4) Defendant paid her a bonus. Plaintiff's arguments are neither consistent with the law nor supported by the record.

### 1. The record contains contemporaneous documentation of Plaintiff's performance issues

The record is rife with contemporaneous documentation that Plaintiff's job performance did not meet Defendant's expectations. On January 13, 2016, Mora prepared a performance appraisal for Plaintiff for the period January 1, 2015 through December 31, 2015, ranking her performance on a scale of 1 (does not meet expectations) to 5 (far exceeds expectations). Mora gave Plaintiff a 2 (partially meets expectations) in 10 categories and a 3 (meets expectations) in the remaining 5 categories. Dkt. 27-2 at 106-11. In a self-evaluation for the period beginning March 1, 2016, Plaintiff expressly

recognized her need to improve her job performance. Dkt. 27-2 at 101-04. Darden apparently did not receive a formal job performance appraisal for the years 2016 or 2017.

The record also contains evidence of complaints Plaintiff's supervisors received about problems in Plaintiff's cases. In February 2015, Jeff Goodman, a marketing agent with Defendant, emailed Plaintiff to inform her that a customer whose application for a policy had been rejected for the 2nd or 3rd time was upset. Dkt. 32 at 81. Goodman informed Plaintiff he "just wanted to let [her] know they expect us to catch these things." Plaintiff responded that she would discuss this expectation with Mora because it was her understanding that her function "was to insure that all fields are completed, I don't have any training on product knowledge." *Id.*

In December 2015, Goodman, on behalf of agent Alan Nadolna, submitted an application for a policy in the names of Nadolna's clients. An exchange of emails between Darden, Goodman, and Nadolna indicates that there was a problem with transmission to and/or receipt of required forms to complete the application. In January 2016, Nadolna told Goodman "our confidence is really getting tested on the handling of this case." In March 2016, when the December 2015 application had still not issued, Darden suggested that it might be necessary to get new signatures from the Clients. Nadolna replied "you will have to be kidding." Dkt. 27-2 at 113-18. Mora testified that shortly after the problems with the Nadolna matter, Goodman asked that a case manager other than Darden be assigned to handle his new business. Dkt. 27-4 at 4.

In December 2016, marketer Kevin Scott complained about Darden's handling of a case for agent Spencer Gordan. Scott worried that the breakdown in communication on

9

<a>
</a>
<b>
</b>

the case, resulting in an 8-day delay in processing, "could cost" Defendant business. Dkt. 27-2 at 119.

In February 2017, Defendant's then-president, Mike Dressander, contacted Frederickson because "Nationwide [was] being slow to issue and pay" on a matter for an important client, Parady Financial, that was being handled by Darden. Greg Parady asked Frederickson to work directly with his new business manager, Luanne Cummings, to follow up on the matter, saying "it cost me money to have people stay on top of your people – very frustrating." Dkt. 27-2 at 128. Later that same day, Cummings sent an email to Darden, copying Frederickson, stating that the information Darden requested that day had previously been provided and that asking for the client's signature at that point would be "unprofessional and unacceptable." Frederickson interceded and promised to work with Cummings "to get a game plan going for your firm's future business." Dkt. 27-2 at 122-26. The next day, Frederickson reported to Cummings that Darden had been pulled from all Parady Financial cases and a new case manager had been assigned. *Id.* at 130.

Despite the above contemporaneous evidence, all of which pre-dates Plaintiff's March 2017 demotion, Plaintiff cites *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015) and *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016) for the proposition that Defendant cannot rely on post-decision documentation to support its stated reason for its adverse employment decision. Plaintiff's reliance on *Heinsohn* and *Burton* is misplaced.

In *Burton*, the Fifth Circuit emphasized that it has "repeatedly held that a charge of 'poor work performance' is adequate [to meet the employer's burden of production] when

10

coupled with specific examples." *Burton*, 798 F.3d at 231. *Burton* simply stands for the obvious proposition that "after-acquired knowledge" cannot have been considered by defendant when making its employment decision. *Id.* Here, the Defendant does not rely on "after-acquired" knowledge to support Darden's demotion—all of the incidents documented in the emails occurred prior to her demotion.

In *Heinsohn*, the Fifth Circuit held that the employer met its burden of production at step 2 of the *McDonnell Douglas* framework and proceeded to determine whether the plaintiff produced evidence to refute the employer's stated reason for the adverse action. 832 F.3d at 236-37. The only "contemporaneous written documentation" from Defendant was a letter that stated: "Based on a review of your work, it has been decided that your employment with [defendant] has been terminated." *Id.* at 238. The Court found plaintiff had presented evidence which cast doubt on the authenticity of the employer's evidence and was sufficient to create numerous genuine issues of material fact precluding summary judgment. *Id.* at 238-39. Significantly, the Court noted the employer produced "scant evidence" of its legitimate reason for firing Heinsohn, and thus, there was very little for Heinsohn to refute or contest to establish pretext. *Id.* at 237.

In contrast to *Heinsohn* and *Burton*, this is not a case that reflects any dispute about what the employer knew or said at the time of the adverse employment decision. This is not a case in which the defendant created documents after-the-fact in order to "paper the file" and retrospectively provide a justification for the challenged decision. This is not a case in which the Defendant produced scant evidence and the Plaintiff raised doubts about the authenticity of the evidence or refuted the evidence. Instead, this is case in which there

11

is contemporaneous evidence that pre-dates Plaintiff's demotion and which supports Defendant's contention that she was demoted for performance issues. Plaintiff has offered no evidence to refute Defendant's legitimate, non-discriminatory reason for the demotion.

### 2. The record does not show Defendant deviated from standard procedures

Plaintiff argues that Defendant's failure to give her a warning and an opportunity to improve her performance prior to demoting her is evidence of pretext. Yet, Plaintiff has failed to identify a specific policy or procedure Defendant violated by demoting her without first offering a written warning and performance improvement plan. There is no evidence that Defendant had a written policy requiring warnings and performance plans prior to demotion, or that doing so was Defendant's usual practice.

The evidence Plaintiff relies on to show pretext are communications between Plaintiff's manager, Frederickson, and the VP of Human Resources, Peck. On February 16, 2017, the day of Mike Dressander's email regarding Parady Financial, Frederickson emailed Peck noting "an issue of persistent performance issues" with Plaintiff that had gotten to the point where "MC's and agents do not want to work with her." Dkt. 27-2 at 132. In her role as VP of Human Resources, Peck suggested Frederick give Plaintiff the option of either accepting a written warning and required performance standards, or a demotion. Frederickson declined to offer Plaintiff the option of a warning with performance standards because "the problem is I cannot keep her in the position of handling cases with agents and MC's . . . sorry, it is late in the game and there should have been better write-ups [ ] but she has to be pulled." Dkt. 27-2 at 133.

12

As the VP of Human Resources, Peck testified that the Defendant's "Performance Management Process" was designed to identify gaps in employee performance but does not address consequences for the employee. Dkt. 33-1 at 25-27. Plaintiff submitted evidence of Defendant's "Standards of Conduct" policy, but the policy does not address job performance. Dkt. 32 at 93-94. The policy grants the employer discretion to determine the form of discipline and the procedures to be followed. *Id.* at 94 ("[W]e may exercise discretion to utilize forms of discipline that are less severe than termination. Examples of less severe forms of discipline include verbal warnings, written warnings, and probationary actions. While one or more of these forms of discipline may be taken, no formal order or procedures are necessary."). Thus, Plaintiff has not pointed to any policy or practice that required Plaintiff to be given a warning, progressive discipline, or an opportunity to improve before being demoted, and has not shown the Defendant violated its own policies by demoting her.

Even if Plaintiff could show that Defendant deviated from its standard procedures, she cannot show pretext. The Fifth Circuit recently explained that an employer's deviation from standard policy or procedure *alone* does not show pretext: "Plaintiffs . . . must connect a departure from or misapplication or procedure to a discriminatory motive." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 460 (5th Cir. 2019). The Fifth Circuit has recognized "that when an employer opts to have a disciplinary system that involves warnings, failure to follow that system *may* give rise to inferences of pretext." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) (emphasis added). In *Goudeau*, plaintiff's employer contended it fired Goudeau for poor performance and

13

insubordination. Goudeau countered his employer's contention with evidence showing the infractions he committed were not within his job duties, and warnings relied upon by his employer were not given to him until the day he was fired. *Id.* at 476-77. The Court concluded that this evidence, *in combination with ageist comments* by Goudeau's supervisor, would allow a jury to conclude that age was the reason for Goudeau's termination. *Id.* at 477.

Here, Plaintiff has not shown that the alleged deviation from standard procedure regarding a written warning has any connection to a discriminatory motive. Instead, the very same evidence Plaintiff relies upon to show that Defendant did not give her a warning or notice of deficiency (the February 2017 email exchange between Frederickson and Peck) supports Defendant's non-discriminatory reason for demoting her (marketers and agents had lost confidence in Plaintiff's work). "At the end of the day, the pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' to allow the jury to find that discrimination was the but for cause of the termination." *Id.* at 478. Plaintiff simply cannot meet that burden in this case. In this case, at the end of the day, Plaintiff has only her own subjective suspicion that Defendant demoted her because of her race.[5] But, "a subjective belief of discrimination, however genuine, [may not] be the basis of judicial relief." *Lawrence v. Univ. of Texas Medical Branch*, 163 F.3d 309, 313 (5th Cir. 1999).

---

[5] It is not entirely clear that Plaintiff harbors such a subjective belief. Plaintiff testified that Frederickson was "just mean," and she does not know why Frederickson treated her differently than others. Dkt. 27-2 at 63.

### 3. Plaintiff cannot show pretext based on Defendant's job performance expectations

Plaintiff argues in her summary judgment response that Defendant's business model unfairly put the responsibility to know annuity products on her as a case manager instead of on the licensing agent as required by the Texas Department of Insurance. She then takes issue with the fact that Defendant did not train her to meet that responsibility. Dkt. 30 at 11-14. Plaintiff's argument is not evidence of pretext. Plaintiff has no evidence, and does not even argue, that Defendant singled out her as an African-American for added responsibility, or gave others training it denied to her. *See id.* at 12 ("The agents do have to do [c]ontinuous education training on annuities, but case managers for Defendant do not."). Even if Defendant held Plaintiff to unreasonable performance standards and it was unfair to demote her, there is no evidence that Frederickson, who made the decision to demote Plaintiff, did not honestly believe Plaintiff's job performance was deficient. *See LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext."). The Court does not second-guess a defendant's business decisions, even if they are wrong or unfair. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor ... to transform the courts into personnel managers.'" quoting *Bienkowski v. Am. Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988)).

### 4.     Defendant's payment of a bonus in 2017 is not evidence of pretext

At the hearing, Plaintiff's counsel argued that the fact that Defendant paid Plaintiff a bonus on the same day that it demoted her is evidence that her demotion resulted from discrimination, not poor job performance.  Plaintiff waived this argument by not raising it in her summary judgment response and she has presented no evidence to support the argument.  In any event, the record before the Court does not provide any basis on which a jury could infer pretext because the bonus payment is not evidence that Defendant's explanation for Plaintiff's demotion is false.  *See  Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000) (determining whether the grant judgment as a matter of law in any particular case depends on a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the *proof that the employer's explanation is false*, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.") (emphasis added).

The only evidence in the record regarding Plaintiff's bonus history is contained in Defendant's response to Darden's claims before the EEOC. Dkt. 32 at 62-71.  Before the EEOC, Defendant confirmed that Darden received no bonus for 2014 because she did not qualify for a bonus after working only 6 months; she received a $500 bonus in 2016 for 2015 performance (although Darden contended the amount was $2,600); and she received a $1300 bonus in March 2017 for 2016 performance. *Id* at 64-65.  Defendant explained:

> As previously referenced, [Defendant] bonuses are based upon a combination of company and individual performance.  In 2016 [Defendant] had a strong year and the company was able to pay employees larger bonuses

16

> because of its performance. Additionally, the New Business Management team recommended increasing the bonuses of all its employees because the team had not had salary increases in a while. Therefore, Ms. Darden's bonus in 2016 was largely based upon the company's performance and past history, not her own self-described substandard performance . . .

*Id.* at 67-68. There is no evidence regarding the amount of bonuses received by any other employee, and no reason to infer that the bonus in any way reflects that Defendant did not have a sincere belief that Plaintiff was not meeting performance expectations. Moreover, the bonus payment in March 2017 reflected company and individual performance for 2016, and the complaints that finally led Frederickson to demote plaintiff were received in late 2016 and early 2017. Plaintiff cannot create a genuine issue of material fact as to pretext based on Defendant's payment to her of a bonus in March 2017.

## IV. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. 27) and dismisses Plaintiff's claims with prejudice. The Court will issue a separate final judgment.

Signed on November 18, 2019, at Houston, Texas.

*[signature]*
Christina A. Bryan
United States Magistrate Judge